IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AT AUSTIN

FILED IN
COURT OF CRIMINAL APPEALS

April 13, 2015

ABEL ACOSTA, CLERK

HENRY W. SKINNER            §

§        No. AP-77,046

VS.                      §

§

THE STATE OF TEXAS       §

## **SUPPLEMENTAL MEMORANDUM OF LAW**

This Court has advised the parties that a question may exist whether Mr. Skinner's pending appeal "arises from a properly filed Texas Code of Criminal Procedure Chapter 64 motion requesting DNA testing …." Order, *Skinner v. State*, No. AP-77,046 (Tex. Crim. App. March 18, 2015) (citing *State v. Patrick*, 86 S.W.3d 592 (Tex. Crim. App. 2002). There are two pleadings in this case that can be pointed to as constituting that properly filed motion.

The first was "Defendant Henry W. Skinner's Third Motion for DNA Testing" ("Third Motion") filed on September 2, 2011. Before the convicting court's order denying the Third Motion became final on appeal, the parties agreed, with this Court's full blessing, not to continue the appeal but instead to return to the convicting court to file what this Court properly characterized as an "agreed Chapter 64 motion to engage in forensic testing." *See State v. Skinner*, No. AP-

1

76,675 (Tex. Crim. App. June 20, 2012) (*per curiam*).[1]  Thus, the agreed motion merely continued the proceeding initiated by Mr. Skinner's properly filed Third Motion.

Moreover, even if proceedings on the Third Motion were somehow deemed to have terminated with the dismissal of the appeal in No. AP-76,675, the agreed order that the parties thereafter jointly filed in the convicting court itself constitutes a "properly filed … Chapter 64 motion requesting DNA testing."  Accordingly, there is no question that the trial court had jurisdiction to order the requested DNA testing, to conduct the evidentiary hearing it later convened, and to enter a finding under art. 64.04; nor is there any doubt that Mr. Skinner's appeal under art. 64.05 is properly before this Court.

A review of the events that preceded the recent DNA testing in Mr. Skinner's case provides necessary context for this conclusion.

As soon as Chapter 64 of the Code of Criminal Procedure took effect in 2001, Mr. Skinner – condemned to death after being convicted of capital murder in

---

[1] At various times, both Mr. Skinner and the State have casually described the post-conviction DNA testing ultimately ordered in this case as "agreed" rather than as the product of an "agreed motion."  *See*, *e.g*., Appellant's Opening Brief at 2 (recounting that in 2012 "the parties agreed to conduct the DNA testing Mr. Skinner had sought ….").  Such offhand descriptions may have invited uncertainty, since a plurality of this Court has suggested that the State and a defendant might agree to conduct DNA testing without invoking the procedures of Ch. 64.  *Patrick*, 86 S.W.3d at 596.  But such passing comments cannot control the Court's analysis here, because unlike the situation hypothesized in *Patrick*, the parties did not undertake any extra-judicial DNA testing.  Instead, as explained in greater detail in the text *infra*, they went to court and obtained a judicial order for post-conviction DNA testing that tracked the specific provisions of Ch. 64, involving the convicting court throughout the testing and post-testing process.

2

Gray County in 1995 – began to pursue forensic DNA testing of certain evidence in his case. The convicting court denied his first two such motions, and this Court affirmed. *Skinner v. State*, 122 S.W.3d 808 (Tex. Crim. App. 2003); *Skinner v. State*, 293 S.W.3d 196 (Tex. Crim. App. 2009). In 2011, the Texas Legislature amended Ch. 64 to remove the provision upon which this Court had relied in upholding the denial of Mr. Skinner's second motion for DNA testing. *See* Certain Pretrial and Post-Trial Procedures and Testing in a Criminal Case, 82d Leg., 2011 R.S., ch. 14 § 5, 2011 Tex. Sess. Law Serv. Ch. 278 (H.B. 1573) (Vernon) (amending Tex. Code Crim. Proc. art. 64.01).

That change in law became effective September 1, 2011. Immediately thereafter, Mr. Skinner filed his Third Motion. The trial court denied that motion, and this Court stayed Mr. Skinner's execution to hear his appeal. Briefs were filed, and this Court heard oral argument on May 2, 2012.

After oral argument, the State approached counsel for Mr. Skinner with an offer to withdraw its long-standing objection to DNA testing in this case if Mr. Skinner would agree to the testing of additional items the State wanted tested. The parties thereafter moved this Court to vacate the decision below and remand for further proceedings, so that they might jointly seek an order from the convicting court authorizing DNA testing. *See* Joint Motion to Vacate and Remand for Submission of an Agreed Proposed Order for Forensic DNA Testing, *Skinner v.*

3

*State*, No. AP-76,675 (hereinafter "Joint Motion to CCA"). With this motion, the parties submitted to this Court a copy of the pleading they intended to file in the convicting court. The parties' joint motion to this Court expressed their view that this pleading would "compl[y] with Chap. 64 in securing the DNA testing requested by Mr. Skinner, and w[ould] also provide for additional DNA testing desired by the State." Joint Motion to CCA at 2; *see also id*. at Exhibit A (pleading the parties intended to file in the convicting court).

After due consideration, this Court entered an order dismissing Mr. Skinner's then-pending appeal. While the Court did not specifically use the words "vacate" or "remand" in its *per curiam* opinion, it did specify that it was dismissing the appeal "with the understanding that the parties w[ould] file with the trial court their agreed Chapter 64 motion to engage in forensic testing." *State v. Skinner*, No. AP-76,675 (Tex. Crim. App. June 20, 2012) (*per curiam*). Importantly, this Court in this opinion did not expressly *deny* the parties' joint request to vacate and remand, and indeed its statement that it was dismissing the appeal "with the understanding" that the parties would return to the district court to continue the proceedings was the functional equivalent of a remand, as it plainly contemplated the perpetuation of the proceeding initiated by the Third Motion.

But, even if that was not the Court's intention, it was both accurate and reasonable for the Court to construe the parties' proposed pleading – which the

4

parties had told this Court they intended to present in that form to the convicting court – as an "agreed Chapter 64 motion." Regardless of how the document itself was labeled ("Agreed Joint Order of the Parties for DNA Testing"), the pleading constituted an "agreed Chapter 64 motion" because it invoked Ch. 64 and asked the trial court to order forensic DNA testing under the statute. *See* Exhibit A to Joint Motion to CCA at 1 (expressing the parties' desire to have the convicting court "authorize DNA testing of evidence in this case under Chapter 64 of the Code of Criminal Procedure"). In other words, even if there had been no prior history of proceedings under the Third Motion, the Agreed Joint Order by itself constituted a proper and sufficient motion to initiate proceedings under Chapter 64.

Other provisions of the pleading – all of which were before this Court when it dismissed the appeal in No. AP-76,675 – reinforce this conclusion. For example, Paragraph 8 provided that once the DNA test results had been reported as described above, and the data underlying the tests had been provided to both parties, the convicting court would "hold a hearing to make the findings required by art. 64.04, Tex. Code Crim. Proc." Exhibit A to Joint Motion to CCA at 7. Ch. 64, of course, contemplates such a hearing and the entry of findings only where testing has been authorized "under art. 64.03." *See* Tex. Code Crim. Proc. art. 64.04 ("After examining the results of testing under Article 64.03 and any

5

comparison of a DNA profile under Article 64.035, the convicting court shall hold a hearing and make a finding ….").

In short, the convicting court's decision to issue an order tracking the provisions of Ch. 64 is unintelligible unless the convicting court construed the parties' joint pleading exactly as this Court had done in dismissing Mr. Skinner's appeal. The only interpretation that makes sense is that the convicting court understood itself to be exercising its authority under Ch. 64 in response to an "agreed Ch. 64 motion," *i.e.*, a request reflecting the parties' implicit agreement that the statutory prerequisites of Ch. 64 were satisfied, and that the convicting court therefore should order the requested forensic DNA testing.

This result is not affected by the fact that the title of the parties' joint pleading in the convicting court did not include the word "motion." As this Court has recognized, it is "settled" law that "in determining the specific nature of the . . . remedy sought [by a particular pleading], this Court is not bound by the denomination contained in the pleadings, but will look to the essence of the pleadings, including prayers, as well as the entire record before us." *White v. Reiter*, 640 S.W.2d 586, 593 (Tex. Crim. App. 1982) (*en banc*). District courts likewise "are not limited by the denomination of pleadings but may look to the essence of those pleadings" in deciding what action, if any, is warranted. *Ex parte Cantu*, 913 S.W.2d 701, 704 (Tex. App. San Antonio, 1995) (citing *White*, 640

6

S.W.2d at 593); *see also*, *e.g.*, *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) (courts should "look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form given to it" (citing Tex. R. Civ. Proc. 71); *Ryland Enterprise, Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (holding that a pleading styled as a motion for judgment notwithstanding the verdict could be construed as a motion to modify judgment, because "courts should acknowledge the substance of the relief sought despite the formal styling of the pleading"). Here, the pleading that the parties jointly submitted to the convicting court was styled a "Proposed Order," but – as this Court itself recognized in dismissing Mr. Skinner's appeal in No. AP-76,675 – the content of that pleading persuaded this Court that it was functionally an "agreed Ch. 64 motion." On these facts, refusing to construe Mr. Skinner's pleading in the convicting court as a motion under Ch. 64 would raise serious due process concerns.

Nothing in *Patrick*, to which this Court directed the parties' attention in its Order of March 18, dictates a similar outcome in this case. On the contrary, *Patrick* supports the conclusion that on the facts of this case, the convicting court had jurisdiction to grant the parties' joint request for testing under art. 64.03 and to hold a hearing and issue findings and conclusions under art. 64.04.

In *Patrick*, counsel representing the inmate seeking post-conviction DNA testing openly admitted to the convicting court that the requested testing was

7

"unlikely to help" Patrick. *Patrick*, 86 S.W.3d at 594. Given the statute's command that a court may only order DNA testing when it is shown that the defendant "would not have been convicted," assuming the testing produced "exculpatory results," that express concession was sufficient to doom Patrick's motion under Ch. 64. *See* Tex Code Crim. Proc. art. 64.03(a)(2)(A). No such concession has ever been made here. On the contrary, it has been Mr. Skinner's express position at every point since Ch. 64 was added to the statute books that he was entitled to DNA testing under its provisions.

Equally important, the convicting court's order in *Patrick* (directing the State, over its objection, to permit DNA testing at Patrick's expense) "d[id] not purport to be based upon Chapter 64," and "did not cite a statutory provision, or any other source of authority, that would authorize [such action]." *Patrick*, 86 S.W.3d at 594. As set out in detail above, the order entered by the convicting court in Mr. Skinner's case cited Chapter 64 and scheduled proceedings that were available only under that statute: a hearing on the results of DNA testing, to be followed by entry of a finding about the significance of those test results as "required by art. 64.04, Tex. Code Crim. Proc."

In further contrast to *Patrick*, the State here did not object in any way to court-ordered DNA testing "under Chapter 64 of the Code of Criminal Procedure," but instead affirmatively joined in the request. The parties' joint submission, and

8

the convicting court's response to it, can only be understood as reflecting a consensus that the prerequisites for DNA testing "under Chapter 64 of the Code of Criminal Procedure" were satisfied. Indeed, given *Patrick*'s holding that a convicting court may not order post-conviction DNA testing unless Ch. 64's requirements have been met – a holding of which the convicting court must be assumed to have been aware[2] – there is no other way to interpret its decision to order the requested DNA testing.[3]

This conclusion, moreover, does two important things. First, it advances the legal system's strong traditional interest in encouraging the parties to litigation to resolve issues by stipulation where possible, to promote judicial economy. Equally important, it avoids the unfairness that would result from reinterpreting the parties' joint pleading at this late date. The parties fully explained their shared understanding and intent to the Court in June 2012; in response, rather than

---

[2] In construing statutes, this Court presumes that the Legislature "act[s] with a knowledge of existing law . . . and [acts] with reference to all the laws." *Ex parte Mangrum*, 564 S.W.2d 751, 758 (Tex. Crim. App. 1978) (expressing general rule of statutory construction). Similarly, judicial review of an order issued by a trial court is impossible to conceive unless the reviewing court begins with the assumption that the trial court "act[ed] with a knowledge of existing law."

[3] Moreover, an alternative analysis leads to the same result. *Patrick* suggests that at least "for a limited time," a trial court would retain jurisdiction to reconsider or rescind an earlier order granting or denying DNA testing under Ch. 64. *Patrick*, 86 S.W.3d at 596. The convicting court's order denying Mr. Skinner's Third Motion was entered November 2, 2011. Its order authorizing DNA testing "under Chapter 64 of the Code of Criminal Procedure" was entered less than one year later, in June 2012, after the State changed its view and urged that the testing be performed. On these facts, this Court could also conclude that Ch. 64 gave the convicting court jurisdiction, once this Court had dismissed the appeal in No. AP-76,765, to order the requested testing by way of reconsidering or rescinding its November 2011 order on Mr. Skinner's third motion for DNA testing.

9

proceeding to decision in No. AP-76,675, the Court allowed them to return to the convicting court. It would raise serious due process concerns for this Court to announce now, for the first time, that the parties' agreement as to certain issues and plan for resolving others – submitted to this Court and labeled by the Court as an "agreed Ch. 64 motion" before being filed with the convicting court – failed to vest the lower court with the authority to resolve the issues on which there had not been agreement.

On this record, taken as a whole, there can be no question that the convicting court had jurisdiction to order the post-conviction testing that both parties sought "under Chapter 64 of the Code of Criminal Procedure." That being the case, there is likewise no question that art. 64.05 gives this Court has jurisdiction over Mr. Skinner's appeal from the adverse finding ultimately entered by the convicting court under art. 64.04.

Respectfully submitted,

s/ Robert C. Owen

ROBERT C. OWEN
Texas Bar No. 15371950
Bluhm Legal Clinic
Northwestern University
      School of Law
375 East Chicago Ave.
Chicago, IL 60611-3069
(312) 503-0135 voice

10

(312) 503-8977 facsimile
robert.owen@law.northwestern.edu

DOUGLAS G. ROBINSON
1440 New York Avenue, N.W.
Washington, DC  20005-2111
(202) 371-7800 voice
(202) 393-5760 facsimile

Counsel for Appellant
Henry W. Skinner

11

## CERTIFICATE OF SERVICE

This certifies that on April 9, 2015, a true and correct electronic copy of the foregoing document was served via the Court's electronic filing system upon counsel for the State of Texas:

Katherine D. Hayes (katherine.hayes@texasattorneygeneral.gov),

Edward L. Marshall (edward.marshall@texasattorneygeneral.gov),

Franklin McDonough (Franklin.McDonough@graycch.com).


s/ Robert C. Owen

Robert C. Owen
Texas Bar No. 15371950
Counsel for Appellant