Affirmed and Opinion filed July 24, 2008








Affirmed and Opinion filed
July 24, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00030-CR

____________

 

BRADLEY ABIUD PEREZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 240th
District Court

Fort Bend County, Texas

Trial Court Cause No. 41,778

 



 

O P I N I O N








Appellant, Bradley Abiud Perez, was indicted on the offense
of injury to a child.  After a bench trial, the trial court found him guilty
and assessed punishment at ten years= confinement in
the Texas Department of Criminal Justice, Institutional Division, and a $10,000
fine, but probated the sentence for ten years.  Appellant thereafter filed a
motion to proceed in forma pauperis, and requested that the trial court provide
him with a free reporter=s record on appeal.  The trial court
denied his motion, and appellant failed to pay or otherwise make arrangements
to pay for a reporter=s record to be filed with this Court. 
Thus, this appeal presents itself to us with only a clerk=s record.[1] 
None of the proceedings at the bench trial are before us.  In seven issues,
appellant challenges various aspects of his conviction.  We affirm.

Factual
and Procedural Background

After a bench trial, appellant was convicted of the offense
of injury to a child.  He was sentenced to ten years= confinement in
the Texas Department of Criminal Justice, Institutional Division, probated, and
a $10,000 fine.  Appellant timely filed his notice of appeal.

Thereafter, appellant filed a AMotion to Continue
to Proceed In Forma Pauperis,@ in which he requested that the trial
court provide him with a free reporter=s record on
appeal.  After conducting two evidentiary hearings to determine whether
appellant was indigent, the trial court denied appellant=s motion, and
issued findings of fact and conclusions of law.  Among them, the trial court
found that (1) appellant Afailed to exercise reasonable efforts to
convert any of his own assets to cash@; (2) appellant Afailed to make any
reasonable efforts to acquire the funds necessary to purchase the reporter=s record; (3)
appellant=s testimony concerning his claims of indigency were Aunsupported by the
evidence and contradictory, at best@; and (4)
appellant Afailed to bring forth satisfactory evidence that he is
indigent,@ and his testimony only established that it would be
an Ainconvenience to
him and to his wife were he to be required to pay for the Reporter=s Record.@  The trial court
concluded, among other things, that A[a]ppellant is not
indigent and therefore has no right to a free Reporter=s Record.@  Appellant then
appealed the trial court=s denial of his motion.








On August 2, 2007, by written order we denied appellant=s motion for a
free reporter=s record.  We further directed appellant to pay for
preparation of the reporter=s record from trial, and notified
appellant that the reporter=s record was due by September 4, 2007. 
Appellant failed to pay or arrange to pay for the reporter=s record.  On
September 12, 2007, the clerk of this Court notified appellant that no reporter=s record had yet
been filed and that he had fifteen days to file a reporter=s record.  We also
requested appellant to advise the Court if he had not made arrangements to pay
for the reporter=s record.  Again, appellant failed to pay
or make arrangements to pay for the reporter=s record, or to
advise us of his failure to do so.

Finally, on October 3, 2007, the clerk of this Court notified
appellant of the court reporter=s statement that appellant had not yet
arranged to pay for the reporter=s record.  The
clerk further notified appellant that the Court would consider and decide those
issues that do not require a reporter=s record unless
appellantCwithin fifteen days of noticeC paid or made
arrangements to pay for the reporter=s record, and
provided the Court with proof of payment.  Appellant filed no reply.  As of the
date of this opinion, no reporter=s record of
appellant=s trial on the merits has been filed with this Court.

Issues
on Appeal








In seven issues,[2]
appellant challenges his conviction for injury to a child.  In his second
issue, appellant complains that he was denied due process of law because the
trial judge was not impartial.  In his third issue, appellant asserts that the
amount of pretrial bail set by the trial court was used as an instrument of
oppression, and that it interfered with his ability to conduct his defense at
trial.  In his fourth issue, appellant argues that he was denied his Sixth
Amendment right to the effective assistance of counsel because the trial court
(1) appointed attorneys to represent him that, in his words, Arefus[ed] to
provide effective assistance of counsel,@ and were
otherwise unfamiliar with the case; (2) refused to appoint him counsel of his
choice; and (3) forced him to proceed without an attorney who was willing to
defend him.  In his fifth issue, appellant contends that section 22.04 of the
Texas Penal Code is unconstitutionally vague, and that the indictment is void
because it fails to give him adequate notice of the conduct that is forbidden
and that which is permitted.  In his sixth issue, appellant asserts that his
parental rights were already terminated in a prior action brought by the State
of Texas, and argues that his criminal trial therefore constitutes a double
jeopardy violation.  In his eighth issue, appellant argues that the trial court
erred in denying his motion for new trial based on newly discovered evidence
that the grand jury that returned his indictment was not lawfully impaneled and
did not operate independently.  In his seventh, ninth, tenth, eleventh, and
twelfth issues, appellant complains of the trial court=s admission of
several pieces of evidence.

Analysis
of Appellant=s Issues

I.        We will
consider those issues that do not require a reporter=s record.








An appellant has the burden to properly initiate the
completion of a record sufficient to illustrate reversible error. See
Tex. R. App. P. 35.3; see
also Cheek v. State, 65 S.W.3d 728, 730 (Tex. App.CWaco 2001, no
pet.); Kent v. State, 982 S.W.2d 639, 641 (Tex. App.CAmarillo 1998,
pet. ref=d, untimely
filed).  If the appellant fails to do so, and an issue on appeal involves matters
omitted from the record due to the appellant=s failure to
request or pay for the record, then the appellant=s actions will
prevent us from adequately addressing the dispute. Kent, 982 S.W.2d at
641.  This effectively waives any complaint on these issues. Id.  We
may, however, consider and decide those issues that do not require a reporter=s record for a
decision. See Tex. R. App. P.
37.3(c).

A.      Appellant
has waived his complaint on the issue of whether the trial judge was not
impartial.

In his second issue, appellant contends that he was denied
due process of law because the trial judge was not impartial.[3] 
He suggests that, because the trial judge denied his pretrial motionsCall of which he
alleges were unopposed by the StateCthe trial judge
failed Ato maintain an
attitude of impartiality throughout the proceedings.@  While we agree
with appellant that he has a due process right to an impartial tribunal, see
U.S. Const. Amend. V, VI; Tex. Const. art. I, __ 10, 19; Brumit
v. State, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006), we conclude that
appellant has waived his complaint on this issue.

The clerk=s record reveals that appellant filed over
sixty-five pretrial motions and other written requests and objections with the
trial court.  However, in his brief, appellant fails to specify the pretrial
motions to which he refers.  Although the clerk=s record contains
copies of several of appellant=s pretrial motions with the trial judge=s handwritten
rulings, we note that several of appellant=s motions were
either granted by the trial judge or withdrawn by appellant.  And, with respect
to those pretrial motions not bearing the trial judge=s handwritten
ruling, from the state of the record we cannot determine which of these other
motions were denied, much less which of these other motions were even
considered by the trial judge.








Furthermore, even assuming that the trial judge considered
and denied appellant=s pretrial motions, and further assuming
that these motions were unopposed by the State, appellant has failed to cite
any authority for the proposition that a defendant=s due process
rights are violated when the trial judge denies the defendant=s unopposed
pretrial motions.  Conclusory arguments that cite no authority present nothing
for our review. See Vuong v. State, 830 S.W.2d 929, 940 (Tex. Crim. App.
1992); Atkins v. State, 919 S.W.2d 770, 774B75 (Tex. App.CHouston [14th
Dist.] 1996, no pet.).

Thus, appellant, having failed to support his argument on
this issue with either references to the appellate record or appropriate
citations to legal authority, has waived his complaint on this issue. See Tex. R. App. P. 38.1(h); see also
Vuong, 830 S.W.2d at 940; Atkins, 919 S.W.2d at 774B75.  We
overrule appellant=s second issue.

B.      Appellant=s complaint
regarding the excessiveness of his pretrial bail is moot, and appellant has
waived his complaint on the issue of whether the amount of pretrial bail
interfered with his ability to conduct his defense at trial.

In his third issue, appellant contends that the amount of
pretrial bail set by the trial court was used as an instrument of oppression,
and that it interfered with his ability to conduct his defense at trial. 
Appellant asserts that his pretrial bail was set at $75,000, and argues that,
because he was released on a personal recognizance bond after his conviction,
pretrial bail Awas impermissibly used as a means to punish him before
trial@ and Ato interfere with,
and impede, his right to conduct his defense in propia persona.@  We examine each
of these arguments separately.








With respect to the appellant=s complaint
regarding the excessiveness of pretrial bail, we conclude that this issue is
moot.  As noted above, appellant was convicted of the offense of injury to a
child.  In addition, he has been released on a personal recognizance bond
pending the outcome of his appeal.  Because appellant has been convicted of the
underlying offense, and because he is no longer in custody pending bail, his
complaint regarding the excessiveness of pretrial bail is moot. See Oldham
v. State, 5 S.W.3d 840, 846 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d) (AIssues concerning
pretrial bail are moot after the accused is convicted.@); see also
Borrego v. State, No. 07-99-0139-CR, 2000 WL 1346651, at *1 (Tex. App.CAmarillo Sept. 19,
2000, no pet.) (concluding that, in an appeal of a habeas corpus proceeding,
issues concerning pretrial bail were moot because the appellant was no longer
in custody pending bail).

And, appellant has waived his complaint that pretrial bail
interfered and impeded his right to conduct his defense at trial because we
have no reporter=s record to review.  Appellant has the
burden to present us with a record sufficient to demonstrate reversible error. See
Cheek, 65 S.W.3d at 730; Kent, 982 S.W.2d at 641.  Without a
reporter=s record, we
cannot determine whether and to what extent appellant was unable to conduct his
defense because he could not post his allegedly excessive bail and therefore
was in custody during trial.  Because we have no reporter=s record, we
cannot determine whether appellant was harmed by this alleged error, and he has
therefore waived his complaint on this issue. See Cheek, 65 S.W.3d at
730; Kent, 982 S.W.2d at 641.  We overrule appellant=s third issue.

C.      Appellant
was not denied his Sixth Amendment right to the effective assistance of
counsel.

In his fourth issue, appellant argues that he was denied
his Sixth Amendment right to the effective assistance of counsel because the
trial court (1) appointed attorneys to represent him that, in his words, Arefus[ed] to
provide effective assistance of counsel,@ and were
otherwise unfamiliar with the case; (2) refused to appoint him counsel of his
choice; and (3) forced him to proceed without an attorney who was willing to
defend him.  While appellant is correct that an indigent defendant has a Sixth
Amendment right to the appointment of counsel in criminal prosecutions, and
that this right entails the right to have the effective assistance of counsel
at trial, we disagree with appellant that he was denied this right by the trial
court.








The Sixth Amendment encompasses both the right to have
counsel appointed to represent an indigent defendant at a criminal trial, and
the reciprocal right to self-representation. Williams v. State, 252
S.W.3d 353, 355B56 (Tex. Crim. App. 2008).  However, an
accused does not have the right to choose appointed counsel, and unless he
waives the right to counsel and chooses to represent himself, or shows adequate
reasons for the appointment of new counsel, he must accept court-appointed
counsel. Burks v. State, 792 S.W.2d 835, 838 (Tex. App.CHouston [1st
Dist.] 1990, pet. ref=d) (citing Thomas v. State, 550
S.W.2d 64 (Tex. Crim. App. 1977); Aguilar v. State, 651 S.W.2d 822, 823
(Tex. App.CHouston [1st Dist.] 1983, no pet.)).  Furthermore,
when a convicted defendant has insisted upon self-representation, any
subsequent claim of ineffective assistance of counsel is not to be considered. See
Faretta v. California, 422 U.S. 806, 834 n.46 (1975).

With respect to appellant=s claim that his
Sixth Amendment rights were violated, the clerk=s record reveals
that the following events occurred:

!                  
Upon appellant=s request for appointed counsel,
the trial court appointed attorney Craig Hughes to represent appellant at
trial.

!                  
Approximately
two months later, appellant filed a AMotion Rejecting The Appointment of Counsel,@ wherein he stated that he was Aaware of the dangers and
disadvantages of self-representation@ and Aknowingly and intelligently
assert[ed] the right to self-representation.@  Apparently,  the trial court never ruled on this motion.

!                  
Appellant later
filed a AMotion For The Court Not To
Obstruct, Impede, Or Implicitly Deny His Right To Proceed Pro Se,@ in which he complained of attorney
Hughes=s qualifications to defend him at
trial, and requested that the court not interfere with his right to proceed pro
se at trial.

!                  
Appellant
subsequently filed a AVerified Motion Terminating The
Services of Craig Hughes,@ in which he Areject[ed] the appointment of
counsel@ and requested the court not to Aimpede, obstruct, or implicitly
deny his right to proceed pro se.@

!                                                                                          
Approximately
one month later, attorney Hughes filed a motion to withdraw as counsel, in
which he asserted that appellant had Aclearly, unequivocally, and consistently asserted his right
to self-representation.@      








!                  
The trial court
conducted a hearing on appellant=s and attorney Hughes=s motions, found that appellant was competent to represent
himself at trial, and ordered (1) appellant be allowed to proceed pro se at
trial on the merits; and (2) attorney Hughes to serve as appellant=s standby counsel for the duration
of the trial.

!                  
Appellant later
filed a AVerified Motion For An Order
Appointing A New Co-Counsel,@ in which he complained that attorney Hughes had failed to communicate
with either him or expert witnesses, and sought the appointment of new
co-counsel to coordinate a new trial date.

!                  
Attorney Hughes
later filed a motion to withdraw as standby counsel, in which he asserted that
he was Aunable to effectively communicate
with [appellant] so as to be able to adequately represent [him],@ and that appellant desired to
represent himself at trial.

!                  
The trial court
granted attorney Hughes=s motion to withdraw, and appointed
attorney Cary Faden to replace attorney Hughes as appellant=s standby counsel.  

!                  
The trial judge
then directed a letter to appellant and to attorney Faden, in which he
explained that attorney Hughes=s motion to withdraw had been granted, attorney Faden had been
appointed as appellant=s new standby counsel, and
reiterated that appellant would be defending himself pro se and that attorney
Faden=s function would be to assist
appellant in any matters he needed help on in preparing for trial.

!                  
Appellant
subsequently filed a AVerified Motion Terminating The Services
Of Co-Counsel Cary M. Faden,@ in which he states that he Ahas decided to
appear without counsel,@ that Ahe must be allowed
to control the organization and content of his own defense, to make motions, to
argue points of law, to participate in voir dire, to question witnesses, and to
address the court and the jury at appropriate points in the trial,@ and in which he
requests the court to immediately terminate attorney Faden=s services.  The
clerk=s record does not
indicate whether the trial court ever ruled on this motion.








From these motions and letters, it is evident that the
trial court did not deny appellant=s Sixth Amendment
right to the effective assistance of counsel.  As a preliminary matter, the
record does not support appellant=s contention that
the trial court forced him Ato proceed without an attorney who was
willing to defend him.@  From the outset of the criminal
proceedings, appellant sought to avail himself of his Sixth Amendment right to
represent himself at trial.  He represented to the trial court that he was Aaware of the
dangers and disadvantages of self-representation,@ and Aknowingly and
intelligently assert[ed] the right to self-representation.@  To this end, the
trial court complied with appellant=s repeated
requests, and after conducting a hearing on appellant=s motions to
represent himself at trial, ordered that appellant be allowed to proceed pro se
at his trial on the merits, and that his appointed attorney serve only as
standby counsel.  In this context, appellant=s complaint that
the trial court forced him to proceed without an attorney who was willing to
defend him is without merit.

Similarly, the record does not support appellant=s assertion that
the trial court refused to appoint him counsel of his choice.  To the contrary,
the trial court actually complied with appellant=s requests to
terminate the services of attorney Hughes.  While the trial court did not
terminate the services of attorney FadenCas appellant
requestedCwe have already explained that an indigent defendant
is not entitled to the appointment of counsel of his choice. See Burks, 792
S.W.2d at 838.  Unless he shows adequate reasons for the appointment of new
counsel, he must accept court-appointed counsel. See id.  However,
without a reporter=s record we are unable to determine
whether appellant made the requisite showing to have new standby counsel
appointed to assist appellant at trial, and whether the trial court erred in
failing to terminate the services of attorney Faden.  Again, appellant=s failure to file
a reporter=s record prevents us from determining whether he was
harmed during trial by this alleged error, and he has therefore waived his
complaint on this issue. See Cheek, 65 S.W.3d at 730; Kent, 982
S.W.2d at 641.








Finally, with respect to appellant=s contention that
the attorneys appointed by the trial court Arefus[ed] to
provide effective assistance of counsel,@ and were
otherwise unfamiliar with the case, appellant=s claims are
without merit.  As noted above, once a convicted defendant has insisted upon
self-representation, any subsequent claim of ineffective assistance of counsel
is not to be considered. See Faretta, 422 U.S. at 834 n.46.  Therefore,
we will only consider the appellate record up to the point where appellant=s
self-representation began. See id.; see also Rodriguez v. State,
763 S.W.2d 893, 896 (Tex. App.CSan Antonio 1988, pet. ref=d).  However,
without a reporter=s record we are unable to determine
whether attorney Hughes provided ineffective assistance of counsel before the
trial court ordered him to serve as standby counsel. See Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (stating that allegations of
ineffective assistance of counsel A>must be firmly
founded in the record= and >the record must
affirmatively demonstrate= the meritorious nature of the claim@) (internal
citations and quotations omitted).  As above, appellant has waived his
complaint on this issue. See Cheek, 65 S.W.3d at 730; Kent, 982
S.W.2d at 641.  We therefore overrule appellant=s fourth issue.

D.      Section
22.04 of the Texas Penal Code is not unconstitutionally vague, and the
indictment provided constitutionally adequate notice to appellant.

In his fifth issue, appellant contends that section 22.04
of the Texas Penal Code is unconstitutionally vague, and that the indictment is
void because it fails to give him adequate notice of the conduct that is
forbidden and that which is permitted, as required by the Sixth Amendment to
the United States Constitution and Article I, section 10 of the Texas
Constitution.  Specifically, he asserts that the Texas Penal Code does not
identify the A>number and intensity of
oscillations= which constitute >shaking= or >shaken baby
syndrome,=@ nor does it Adefine >the number and
intensity of oscillations which are required to cause >forceful trauma.=@  Appellant
further asserts that the indictment, as written, does not sufficiently inform
him of the charge against him to allow him to prepare an adequate defense at
trial.  We disagree with appellant that section 22.04 of the Penal Code is
unconstitutionally vague, and that the indictment does not sufficiently inform
him of the charge against him.








1.       The
statute is not unconstitutionally vague.

Appellant was indicted under section 22.04 of the Texas Penal
Code.  That provision makes it an offense if a person intentionally, knowingly,
recklessly, or with criminal negligence causes serious bodily injury to a child
under fourteen years of age. See Tex.
Pen. Code _ 22.04(a)(1), (c)(1).  The Penal Code defines Aserious bodily
injury@ as Abodily injury that
creates a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.@ Id. _ 1.07(46). 
However, the Penal Code does allow a parent or stepparent to use force against
a child to discipline the child or to safeguard or promote the child=s welfare. See
id. _ 9.61(a). 
But, the parent or stepparent must reasonably believe that the force used against
the child must be necessary to accomplish those ends. See id.








Both the Court of Criminal Appeals and this Court have held
that former versions of section 22.04 were not unconstitutionally vague. See
Phillips v. State, 588 S.W.2d 378, 380B81 (Tex. Crim.
App. 1979) (interpreting former version of section 22.04 that stated offense as
Aintentionally,
knowingly, recklessly, or with criminal negligence engag[ing] in conduct that
causes serious bodily injury . . . to a child who is 14 years of age or younger@); Nabors v.
State, 508 S.W.2d 650, 651B52 (Tex. Crim. App. 1974) (interpreting
predecessor statute to section 22.04, which stated offense as Aintentionally
maim[ing], disfigur[ing], or batter[ing] a child who is 14 years of age or
younger or engag[ing] in conduct which by omission or commission is intended to
cause physical injury to, or deformity or deficiency in, a child who is 14
years of age or younger@); Teubner v. State, 742 S.W.2d 57,
58B59 (Tex. App.CHouston [14th
Dist.] 1987, pet. ref=d) (interpreting former version of section
22.04 that stated offense as Aintentionally, knowingly, recklessly, or
with criminal negligence, by act or intentionally, knowingly, recklessly by
omission, engag[ing] in conduct that causes to a child [who is 14 years of age
or younger] . . . serious bodily injury@).  Because the
current version of section 22.04 does not vary materially from the prior
versions of section 22.04 in terms of the elements of the offense, we hold that
the current version of section 22.04 is not unconstitutionally vague.

2.       The
indictment provided constitutionally adequate notice to appellant.

A criminal defendant has a right to notice under the United
States and Texas Constitutions. See U.S.
Const. amend. VI; Tex. Const.
art. I, _ 10; see also
Lawrence v. State, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007).  To satisfy
this notice requirement, an indictment must be Aspecific enough to
inform the accused of the nature of the accusation against him so that he may
prepare a defense.@ State v. Moff, 154 S.W.3d 599, 601
(Tex. Crim. App. 2004).  An indictment is generally sufficient so long as it
tracks the language of a penal statute that itself satisfies the constitutional
requirement of notice. Lawrence, 240 S.W.3d at 916 (citing State v.
Mays, 967 S.W.3d 404, 406 (Tex. Crim. App. 1998)).

Appellant=s indictment sufficiently tracks the
language of section 22.04 of the Texas Penal Code.  In this case, the
indictment alleged that appellant

[D]id then and there intentionally
and knowingly cause serious bodily injury to [the Complainant] . . . by shaking
the Complainant with the Defendant=s hands, a deadly
weapon, and did, intentionally and knowingly cause serious bodily injury to
[the Complainant] . . . by causing forceful trauma to the Complainant=s head in a manner
and means unknown to the Grand Jury, and during the course of the offense the
Defendant did use a deadly weapon, the nature and description of which is
unknown to the Grand Jury . . . .








Appellant=s indictment
tracks the language of Texas Penal Code section 22.04, which states an offense
under the laws of the State of Texas.  It informed appellant that he was being
charged with (1) intentionally and knowingly (2) causing serious bodily injury
(3) to the complainant (4) by shaking the complainant with appellant=s hands, and with
(5) causing forceful trauma to the complainant=s head (6) in an
unknown manner and means (7) while using a deadly weapon.  Here, the indictment
sufficiently informed appellant of the nature of the accusations against him to
allow him to prepare a defense at trial. See Moff, 154 S.W.3d at 601.

Therefore, the indictment provided constitutionally
adequate notice to appellant. See id.; see also Lawrence, 240
S.W.3d at 916; Teubner, 742 S.W.2d at 58B59.  We overrule
appellant=s fifth issue.

E.      Appellant=s criminal trial
does not constitute a double jeopardy violation.

In his sixth issue, appellant asserts that his parental
rights were already terminated in a previous action brought by the State of
Texas, and argues that his criminal trial therefore constitutes a double
jeopardy violation.  We disagree.

 The double jeopardy clause of the Fifth Amendment to the
United States Constitution protects against three distinct abuses:  (1) a
second prosecution for the same offense after acquittal; (2) a second prosecution
for the same offense after conviction; and (3) multiple punishments for the
same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled
on other grounds, Alabama v. Smith, 490 U.S. 794 (1989).  Appellant=s issue
encompasses the third protection.

Double jeopardy is not violated when the same facts result
in civil proceedingsCin which a parent=s rights are
terminatedCand criminal proceedings by which a parent is punished
for criminal offenses committed. Ex parte Cantu, 913 S.W.2d 701, 705B06 (Tex. App.CSan Antonio 1995,
pet. ref=d); Malone v.
State, 864 S.W.2d 156, 158 (Tex. App.CFort Worth 1993,
no pet.).  When the State seeks custody of children, it pursues a purely
remedialCand not punitiveCresult:  the
protection of minors. See Cantu, 913 S.W.2d at 705B06.  Because the
State does not seek to punish the parents or impose retribution in a custody
proceeding, lost custody cannot be considered punitive for double jeopardy
purposes. See id.








We overrule appellant=s sixth issue.

F.       The trial
court did not err in denying appellant=s motion for new
trial based on newly discovered evidence.

In his eighth issue, appellant argues that the trial court
erred in denying his motion for new trial based on newly discovered evidence
allegedly demonstrating that the grand jury returning his indictment was not
lawfully impaneled and did not operate independently.[4] 
Appellant asserts that, after judgment was entered in his case, a local
television station reported that the Fort Bend County District Attorney=s Office Aarbitrarily
indicted individuals in order to do favors for campaign contributors.@  Appellant argues
that the trial court was required to grant his motion for new trial in light of
this newly discovered evidence.  We disagree.

A motion for new trial must be filed no later than thirty
days after the date the trial court imposes sentence, and any amended motion
for new trial must be filed within the same thirty-day period and before the
trial court rules on the original motion. Tex.
R. App. P. 21.4; see Drew v. State, 743 S.W.2d 207, 222B23 (Tex. Crim.
App. 1987).  This includes motions for new trial based on newly discovered
evidence. See Drew, 743 S.W.2d at 222B23.  The trial
court must rule on a motion for new trial within seventy-five days after
imposing sentence. Tex. R. App. P.
21.8(a).  A motion that is not ruled on by written order within seventy-five
days after the date sentence is imposed is deemed denied. Tex. R. App. P. 21.8(c).








On December 21, 2006, the trial court imposed sentence upon
appellant.  However, appellant did not file his motion for new trial based on
newly discovered evidence until October 31, 2007C314 days after the
date his sentence was imposed.  Because appellant=s motion for new
trial based on newly discovered evidence was filed outside the thirty-day
window prescribed by Rule 21.4 of the Texas Rules of Appellate Procedure, the
motion was untimely and the trial court lacked jurisdiction to consider it. See
Beathard v. State, 767 S.W.2d 423, 433 (Tex. Crim. App. 1989) (en banc)
(holding that the trial court lacked jurisdiction to decide an untimely motion
for new trial based on newly discovered evidence that was filed over one year
after sentence was imposed); Ex parte Ybarra, 629 S.W.2d 943, 945 (Tex.
Crim. App. 1982) (en banc) (stating that the trial court may not grant new
trial sua sponte in the absence of timely motion for new trial); Garza
v. State, 904 S.W.2d 877, 878B79 (Tex. App.CCorpus Christi
1995), aff=d, 931 S.W.2d 560 (Tex. Crim. App.
1996) (concluding that the trial court lost jurisdiction over the case when a
timely motion for new trial was overruled by operation of law); Hamilton v.
State, 804 S.W.2d 171, 174 (Tex. App.CFort Worth 1991,
pet. ref=d) (concluding that
an amended motion for new trial filed 118 days after the date sentence was
imposed was a nullity and the trial court was without jurisdiction to consider
it).  We overrule appellant=s eighth issue.[5]








II.       Appellant
has waived his complaint on alleged evidentiary errors committed by the trial
court.

In his seventh, ninth, tenth, eleventh, and twelfth issues,
appellant alleges that the trial court abused its discretion when it failed to
(1) exclude the testimony of Valerie Treece, whose nameCaccording to
appellantCwas not included on the State=s witness list nor
identified in the State=s Brady material; (2) suppress the
State=s Aelectronic records@ and to allow an
expert to evaluate those records; (3) direct the State to deliver ABrady and Rule 404(b)
material@[6] to appellant or
his designees; (4) conduct a Daubert hearing[7];
and (5) conduct a Jackson-Denno hearing concerning the testimony of
appellant=s wife.  We interpret appellant=s allegations as a
challenge to the trial court=s admission of the following pieces of
evidence:  (1) the testimony of Valerie Treece; (2) the State=s Aelectronic records@; (3) the State=s scientific and
medical expert testimony regarding the complainant=s injuries; and
(4) the testimony of Rebecca Perez, appellant=s wife.








However, appellant has waived these complaints because of
his failure to arrange for a reporter=s record on
appeal.  As explained above, appellant was notified by the clerk of this Court
of the effect of his failure to pay or make arrangements to pay for a reporter=s record on
appeal. See Tex. R. App. P.
37.3(c) (providing that the court of appeals may consider and decide those
issues that do not require a reporter=s record if (1)
the clerk=s record has been filed; (2) the appellant failed to
pay or make arrangements to pay for a reporter=s record; and (3)
the appellant is not indigent).  Without a reporter=s record, we have
no way of knowing whether any of the evidence appellant complains of was
actually admitted at trial.  This, in turn, precludes us from assessing the
potential harm caused by the trial court=s alleged errors. 
In sum, by failing to pay or otherwise arrange for a transcription of the trial
sufficient to illustrate the trial court=s alleged errors,
appellant has not only prevented us from considering these alleged errors, but
has also waived his complaint as to each. See Kent, 982 S.W.2d at 641; see
also Cheek, 65 S.W.3d at 730.  We therefore overrule appellant=s seventh, ninth,
tenth, eleventh, and twelfth issues.

Conclusion

Having
addressed and overruled each of appellant=s issues, we
affirm the judgment of the trial court.           

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment rendered and Opinion filed July
24, 2008.

Panel consists of Chief Justice Hedges and
Justices Fowler and Boyce.

Publish C Tex. R. App. P. 47.2(b).









[1]  The transcripts of three postconviction hearings
have been filed with this Court.  The first hearing was conducted to determine
the amount of appellant=s appeal bond, while the second and third hearings
were conducted to determine appellant=s
indigency.





[2]  In his brief, appellant purportedly challenges his
conviction in twelve issues.  Because appellant is representing himself in this
appeal, we have given him considerable latitude in the consideration of what he
has presented as issues for our review.  See Barnes v. State, 832 S.W.2d
424, 426 (Tex. App.CHouston [1st Dist.] 1992, no pet.) (explaining that
the court of appeals reviews pro se pleadings Awith patience and liberality@). 
However, we hold a pro se appellant to the same standards as a licensed
attorney, and require them to comply with applicable laws and rules of
procedure. See Mansfield State Bank v. Cohn, 573 S.W.2d 181, 184B85 (Tex. 1978); Kindley v. State, 879 S.W.2d
261, 264 (Tex. App.CHouston [14th Dist.] 1994, no pet.).  Although we
construe the briefing rules liberally, see Tex. R. App. P. 38.9, appellant=s brief fails to provide any argument supported by references to the
appellate record regarding the first issue stated in his brief:  ADid the trial court transgress upon Mr. Perez [sic]
due process of law right when it subjected him to an unnecessary trial?@  Accordingly, appellant=s brief fails to sufficiently raise this issue on appeal, and it is
overruled. See Tex. R. App. P.
38.1(h).  Furthermore, because we lack a reporter=s record, we will consider appellant=s
five issues regarding alleged evidentiary errors committed by the trial judge
in a single issue.





[3]  In his brief, appellant states this issue using the
following language:  ADid the trial court err when it concluded that Mr.
Perez was guilty of the offense charged because the trial court believed he was
guilty?@  As noted above, we have granted appellant some
liberality in our review of his brief.  We construe the language used by
appellant as a challenge to the trial judge=s
impartiality, and we address this issue accordingly.





[4]  In his brief, appellant states this issue in the
following way:  ADid the trial court err when it
failed or refused to order the grand jury transcripts released after it was
disclosed that the Fort Bend County District Attorney uses indictments in order
to grandstand for campaign contributors?@  Because appellant filed
a AMotion For A New Trial Based On New Evidence@Cwherein he references a local television news report
discussing alleged impropriety in the Fort Bend County District Attorney=s OfficeCwe
interpret appellant=s issue as one challenging the denial of his motion
for new trial based on newly discovered evidence, and address it accordingly.





[5]  Even if we were to construe appellant=s issue as a challenge to the trial court=s denial of his pretrial motions seeking a
determination that the grand jury that returned his indictment was Alawfully impaneled and acted independently@Cwhich we construe as a challenge to the form of the
indictmentCwe would conclude that the trial judge did not abuse
his discretion in denying appellant=s
motion. See Tex. Code
Crim. Proc. art.
27.09(3) (providing that a complaint that the indictment Awas not returned by a lawfully
chosen or empaneled grand jury@ is a challenge to the form of the indictment); Caraway v. State,
911 S.W.2d 400, 401 n.1 (Tex. App.CTexarkana 1995, no pet.) (same); see also State v. Flournoy, 187 S.W.3d 621, 623 (Tex. App.CHouston [14th Dist.] 2006, no pet.) (stating that an appellate court
reviews the trial court=s ruling on a motion to quash for
an abuse of discretion).  A defendant
challenging an indictment carries the burden of proof in a motion to quash. Flournoy,
187 S.W.3d at 623 (citing Wheat v. State, 537 S.W.2d 20, 21 (Tex. Crim.
App. 1976)).  In his motion, appellant made no allegations regarding
discrimination in the impanelment of the grand jury that returned his
indictment, or that it failed to act independently.  Nor did he attach any
evidence to his motion that would suggest the grand jury was not lawfully
impaneled, or that it did not act independently.  Therefore, appellant did not
establish a prima facie case of discrimination in the impanelment of the grand
jury that returned his indictment, and the trial court did not abuse its
discretion in denying appellant=s motion. See
Castaneda v. Partida, 430 U.S. 482, 494B95
(1977) (establishing a three-part test for demonstrating an equal protection
violation in the selection or impanelment of a grand jury, and discussing the
evidence necessary to make the required showing); see also Garcia v. State,
919 S.W.2d 370, 393 (Tex. Crim. App. 1996) (op. on reh=g) (holding that the appellant failed to satisfy the Partida
test where he failed to present any evidence of (1) the percentage of
Hispanics in the county where he was indicted; (2) the racial composition of
the grand jury that indicted him; or (3) the disparity between the percentage
of Hispanic residents of that county and the percentage of Hispanic residents
summoned for grand jury service).





[6]  In his brief, appellant does not specify the ABrady and
Rule 404(b) material@ to which he refers.  However, in other sections of
his brief, appellant discusses the trial court=s commission of alleged Brady and Rule 404(b) violations in the
context of its admission of Treece=s
testimony and the State=s Aelectronic
records.@  Accordingly, we interpret this as a further
challenge to the trial court=s admission of
each of these pieces of evidence.





[7]  In his AMotion
For A Robinson-Daubert Hearing,@
appellant fails to identify the particular expert whose testimony he wishes to
challenge.  However, in his AAmended Motion
For A Daubert Hearing,@ appellant specifically
references Aproposed medical and scientific evidence@ relating to Amanual
shaking@ and Asubdural
hematomas and retinal hemorrhages,@
and requests a trial court determination of A[w]hether
shaken baby syndrome meets the Daubert criteria for admissibility as a
scientific theory to explain the [complainant=s] injuries.@  We therefore interpret appellant=s complaint as a challenge to the trial court=s admission of the State=s medical expert testimony regarding the complainant=s injuries.